**WYOMING OUTDOOR COUNCIL, et al., Plaintiffs,**

v.

**U.S. FOREST SERVICE, et al., Defendants,**

and

**MARATHON OIL COMPANY, et al., Intervenor–Defendants.**

Civ. A. No. 97–0355 JR.

United States District Court, District of Columbia.

Oct. 16, 1997.

Robert Wiygul, Earthjustice Legal Defense Fund, Denver, CO, Howard Fox, Earthjustice Legal Defense Fund, Washington, DC, for Plaintiffs.

Wells D. Burgess, Special Litigation Counsel, U.S. Dept. of Justice Environment and Natural Resources Div., General Litigation Section, Washington, DC, for Defendants.

Charles L. Kaiser, Charles A. Breer, Ezekiel J. Williams, Davis, Graham & Stubbs LLP, Denver, CO, Kirby J. Iler, Marathon Oil Co., Cody, WY, for Intervenor–Defendants.

## MEMORANDUM

ROBERTSON, District Judge.

Plaintiffs are a coalition of environmental organizations whose members regularly use and enjoy the Shoshone National Forest, a two and one half million acre forest in Northwest Wyoming. In this case, they challenge the procedure that the United States Forest Service ("USFS") has announced it will use for the allocation of oil and gas leases in the Shoshone. Plaintiffs argue that USFS has unreasonably interpreted its own regulations, and that the USFS procedure violates the

National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.* The case is before the court on cross-motions for summary judgment. This memorandum sets forth the reasons for the accompanying order, which grants the motions of the government and the intervenors and denies the motion of plaintiffs.

## 1. USFS interpretation of its own regulations

█ Plaintiffs' first argument is that the USFS interpretation of its own regulations is unreasonable.[1] This argument can succeed only if "the agency's interpretation ... is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson University v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) (internal quotations and citations omitted). Moreover, to set aside an agency action under the APA, a reviewing court must find that the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) Given the requirements for substantial deference, I cannot set aside the USFS interpretation of the regulation in this case.

The regulation at issue, 36 C.F.R. § 228.102, was promulgated by USFS in 1990 to clarify the roles of the several federal agencies involved in the oil and gas leasing process.[2] The parties' disagreement arises out of subsection (e) of the regulation, which reads:

(e) *Leasing decisions for specific lands.* At such time as specific lands are being considered for leasing, the Regional Forester shall review the area or Forest-wide leasing decision and shall authorize the

Bureau of Land Management to offer specific lands for lease subject to:

(1) Verifying that oil and gas leasing of the specific lands has been adequately addressed in a NEPA document, and is consistent with the Forest land and resource management plan. If NEPA has not been adequately addressed, or if there is significant new information or circumstances as defined by 40 CFR 1502.9 requiring further environmental analysis, additional environment analysis shall be done before a leasing decision for specific lands will be made. If there is inconsistency with the Forest land and resource management plan, no authorization for leasing shall be given unless the plan is amended or revised.

(2) Ensuring that conditions of surface occupancy identified in § 228.102(c)(1) are properly included as stipulations in resulting leases.

(3) Determining that operations and development could be allowed somewhere on each proposed lease, except where stipulations will prohibit all surface occupancy.

Plaintiffs argue that the USFS interpretation of this subsection, which employs an *internal, non-public* validation and verification process *after* authorizations have been issued for the leasing of specific lands, arbitrarily reads out the last two sentences of subsection (e)(1). Plaintiffs submit that those sentences unambiguously require USFS to make the three findings required by subsection (e) *before* authorizing the Bureau of Land Management ("BLM") to offer specific lands for lease.

---

1. Complaint, Count III. The regulation at issue, 36 C.F.R. § 228.102, implements the Federal onshore Oil and Gas Leasing Reform Act ("FOOGLRA"), 30 U.S.C. § 226(g–h).

2. The regulation was also designed to satisfy contradictory decisional law that had previously hampered the oil and gas leasing process. The Ninth and Tenth Circuits—the two circuits in which most National Forest land is located—had interpreted the application of NEPA to the prior regulations differently. The Ninth Circuit had endorsed the "up front" system of NEPA compliance, which requires a site-specific Environmental Impact Statement ("EIS") to be prepared

before any land is made administratively available for leasing. *Conner v. Burford,* 848 F.2d 1441 (9th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989). The Tenth Circuit had endorsed the "general/site specific" system, which requires that one EIS be prepared at the stage of making land administratively available for leasing, and that a later EIS be prepared upon authorizing specific parcels for leasing. *Park County Resource Council v. U.S. Dept. of Agriculture,* 817 F.2d 609, 620 (10th Cir.1987), *overruled on other grounds,* 956 F.2d 970 (10th Cir.1992).

Plaintiffs have presented a reasonable alternative reading of subsection (e), but they have not met their burden of showing that the USFS interpretation is unreasonable. USFS reads the regulation in a way which allows it to make a large area of land administratively available for leasing and then make the subsection (e) findings by going back and internally verifying that it has complied with NEPA before actually leasing specific parcels. Upon reviewing the regulation as a whole, I cannot say that this interpretation is at odds with either the overall structure or the specific language of the regulation. Moreover, the USFS interpretation is supported by the plain language of the regulation, which makes the final two sentences of subsection (e)(1) subject to the USFS "verifying" that NEPA compliance is adequate. Verification is exactly what the USFS interpretation requires.

## 2. Evaluation of the USFS procedure under NEPA

Plaintiffs' second argument is that the procedure prescribed by the regulations—at least as interpreted by USFS—must be disapproved because it is inconsistent with NEPA.[3] Where an agency action violates a controlling federal statute, that action of course must be struck down regardless of whether the agency is reasonably implementing its own regulations.

Plaintiffs' NEPA argument proceeds from the fact that the USFS authorization for 950,000 acres of the Shoshone to be leased, nearly half with conditions permitting surface occupancy, *commits* those lands to be leased. Plaintiffs object that there will be no opportunity for further public comment and that, when the land is later divided into parcels and leased, there will be no opportunity for public comment or appeal of the adequacy of environmental review as to any individual parcel until after a lease has been executed.

They argue that such leases "irretrievably commit" specific parcels of land to oil and gas development in violation of clear precedent requiring site-specific NEPA compliance before the point of irretrievable commitment of federal land. *See Sierra Club v. Peterson,* 717 F.2d 1409 (D.C.Cir.1983).

*Peterson* involved facts remarkably similar to the present case, and it provides the framework under which plaintiffs' claim must be considered: I am required to consider at what point in the process the land is irretrievably committed and whether the process requires the agency to fulfill its NEPA obligations prior to that point. If the process used by USFS to lease the Shoshone does not require site-specific evaluation of environmental consequences before specific parcels are committed to oil and gas leasing, it will be violative of NEPA and must be enjoined. *Peterson,* 717 F.2d at 1414–15.

■ The government defendants and oil company intervenors advance two arguments in support of their submission that the USFS process for leasing the Shoshone satisfies *Peterson.* First, they argue that *Peterson* held that the "point of commitment" in the oil and gas leasing context is the time of lease issuance, and they say that point will not be reached until after USFS has made the three findings required by 36 C.F.R. § 228.102(e). Defendants assert that this process assures that NEPA compliance will have been done by the point of commitment, as *Peterson* requires. That argument is rejected. As plaintiffs point out, the Shoshone EIS and accompanying Record of Decision ("ROD") authorize 450,000 acres for surface occupancy leasing and specify that "there [will] not be another NEPA analysis and a decision that could be appealed prior to leasing." EIS, at II–7. USFS passed the "go/no go" point, at least as far as NEPA is concerned, when it issued the Shoshone EIS and ROD.[4]

---

**3.** Complaint, Count II. Plaintiffs also allege a violation of the National Forest Management Act (NFMA), 16 U.S.C. § 1600, et seq. Complaint, Count I. The NFMA count need not be addressed separately, however, because it turns on the NFMA's incorporation of NEPA and USFS regulations—the same issues that decide the other counts.

**4.** Another NEPA analysis will be done when a lessee files an Application for Permit to Drill ("APD").Here, unlike in *Peterson,* the USFS plan allows for the denial of APD's. In that event, however, the lessee could rely upon the USFS finding that "operations and development could be allowed *somewhere* on each proposed lease," 36 C.F.R. § 228.102(e)(3) (emphasis added)

**20**

The second argument of defendants and intervenors is that the HIS for the entire Shoshone, which was prepared at the time of the administrative availability decision, is sufficiently detailed to satisfy NEPA's requirement of site-specific environmental evaluation. This argument is accepted, and it is dispositive. Again, *Peterson* provides the controlling authority: "If the Department chooses not to retain the authority to preclude all surface disturbing activities, then an EIS assessing the full environmental consequences of leasing must be prepared at the time of commitment." 717 F.2d at 1415.

Plaintiffs argue that the existing EIS is not site specific because nobody knows yet what the sites are. The government, however, maintains that the EIS "assess[es] the full environmental consequences of leasing" and that the EIS is sufficient to allow it to make site-specific decisions, thus satisfying *Peterson*'s requirements. The USFS determination on that point is entitled to deference. I have reviewed the EIS and cannot find that it does not contain "sufficient discussion of the relevant issues and opposing viewpoints to enable the decisionmaker to take a 'hard look' at environmental factors, and to make a reasoned decision." *Louisiana Ass'n of Independent Producers and Royalty Owners v. Federal Energy Regulatory Commission*, 958 F.2d 1101, 1117 (D.C.Cir.1992) (internal quotations and citation omitted)

*ORDER*

For the reasons set forth in the accompanying memorandum, it is this 16th day of October 1997

**ORDERED** that the motion of plaintiffs for summary judgment [# 30] is **denied.** It is **FURTHER ORDERED** that the motions of defendant for summary judgment [# 31] and of intervenor-defendants for summary judgment [# 29] are **granted.**